UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

№ 13-CV-1379 (JFB)(SIL)

ALEXIS L. WRIGHT, AS THE ADMINISTRATOR OF THE ESTATE OF JAMES A. WRIGHT,

Plaintiff,

VERSUS

UNITED STATES OF AMERICA,

Defendant.

MEMORANDUM AND ORDER
February 11, 2016

JOSEPH F. BIANCO, District Judge:

On March 15, 2013, plaintiff decedent James Wright ("decedent" or "Wright") filed this action, raising claims based in negligence against the United States of America under 28 U.S.C. § 1346(b). Specifically, the complaint alleged that the United States is liable under the Federal Tort Claims Act for injury arising from an ankle bracelet that was negligently placed and maintained on Wright's right leg and/or ankle from April to October 2010. After plaintiff's death, the Court permitted the substitution of Alexis Wright, as the administrator of the estate of James A. Wright, as the plaintiff. Plaintiff asserts that the negligent placement and maintenance of the ankle bracelet on the right ankle, notwithstanding Wright's extensive medical history (including insulin dependent diabetes, peripheral neuropathy, and a prior partial amputation of the left foot) and alleged complaints about irritation caused by the bracelet, resulted in "months of hospitalization, debridement surgeries to remove tissue, ligaments and bone, skin grafting, intravenous antibiotics and eventually a below the knee amputation." (Pl.'s Opp'n, at 1-2.)

Defendant United States of America ("defendant" or "the Government") now moves to dismiss for a lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and for summary judgment, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. Plaintiff also moves for summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure. For the reasons stated below, both motions are denied.

In particular, defendant argues that absolute immunity exists for any alleged negligence in the placement and maintenance of an ankle bracelet on a probationer because the probation officer

1

was implementing Judge Feuerstein's directive reflected in the judgment of conviction. The Court disagrees. Judge Feuerstein simply ordered home detention with electronic monitoring; she gave no direction regarding the manner of such monitoring. Thus, any negligence in the application or maintenance of the ankle bracelet by the Probation Department is not protected by absolute immunity. Similarly, any such negligence also would not be subject to immunity under the discretionary function exception to the FTCA. The decision about where, or how tight, to place an ankle bracelet on a probationer is not grounded in considerations of public policy; rather, the allegations in this case relate to negligence that, if proven, would be unrelated to any plausible policy objective. The allegations in this case are akin to allegations that a police officer, in effectuating an arrest pursuant to a valid warrant, placed handcuffs on an arrestee too tight and refused to loosen them despite being told that the handcuffs were hurting the arrestee's wrists. It is well-settled that a law enforcement officer would not be protected by immunity or the discretionary function exception to the FTCA simply because he or she was effectuating a court order in placing the handcuffs on the arrestee, if the officer was aware of the excessive and unnecessary tightness of the handcuffs and failed to address it. Similarly, in the instant case, if plaintiff can prove that the probation officer was aware of the injury being produced by the ankle bracelet and negligently tightened it or failed to take reasonable action to allow the probationer to address the injury, neither absolute immunity nor the discretionary function exception to the FTCA would insulate the government from liability for such negligence.

On the ultimate question of negligence, the Court concludes that there are disputed issues of material fact that preclude summary judgment in either party's favor. Plaintiff points to evidence, although disputed by defendant, that Wright began to experience a rash, irritation, and redness on his right ankle in August 2010 and complained to Danielo "a couple of times" regarding this condition prior the circumstances that led to hospitalization for infection to his ankle in October 2010, and that the probation officer never did anything to address such complaints. In addition, plaintiff points to evidence that, when Wright showed a cut/infection on his ankle on October 12, 2010 and the probation officer recommended that Wright see a doctor, the probation officer moved the bracelet away from the cut and tightened it so that it would not slide down, rather than removing it or seeking some modification of the conditions of monitoring from the court. The bracelet remained on Wright's ankle for another four days before it was cut off in the hospital emergency room during treatment of the ankle. Construing the evidence most favorably to plaintiff, there are disputed issues of fact as to whether the probation officer was negligent in the placement and maintenance of the ankle bracelet that caused injury to Wright. Those same issues of disputed fact also preclude summary judgment in plaintiff's favor. Specifically, the probation officer testified that: (1) he was not aware of any problems with the ankle bracelet from Wright or any other source, prior to October 12, 2010; (2) when Wright showed him the cut on his ankle on October 12, 2010, the probation officer told him to see a doctor, gave him permission to leave his home to do so, and moved the bracelet away from the cut so that it would not cause irritation; and (3) neither Wright nor any doctor advised the probation officer after the doctor treated the cut on October 12, 2010, that the electronic bracelet needed to be removed for medical reasons.

2

Therefore, although plaintiff has submitted the report of a corrections expert (who opines that the probation officer was negligent in his handling of Wright's ankle bracelet) and a medical doctor (who opines that the failure of the probation officer to take action on October 12, 2010 caused a worsening of Wright's condition), a rational jury could conclude, if defendant's evidence is credited and all reasonable inferences are drawn in defendant's favor, that the probation officer did not act negligently at any time, and did not cause any injury to plaintiff. Finally, even if the probation officer is proven to have acted negligently, there are also disputed issues of comparative negligence that must be resolved by a jury. Accordingly, the cross-motions for summary judgment are denied.

I. BACKGROUND

A. Facts

The following facts are taken from the parties' depositions, affidavits, and exhibits, and the parties' respective Rule 56.1 statements of facts ("Def.'s 56.1" and "Pl.'s 56.1").[1] Unless otherwise noted, the facts are undisputed. Upon consideration of the motions for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2001).

In 2004, the Suffolk County District Attorney's Office commenced an investigation into James Wright, who was employed as the assistant superintendent for operations, along with other members of the William Floyd School District, relating to allegations that they siphoned district money for personal benefit and did not declare this money on their income tax returns. (Pl.'s 56.1 ¶ 29.) On August 11, 2008, the United States commenced criminal proceedings against James Wright by an Information charging that Wright filed a false federal tax return for the year 2002. (Def.'s 56.1 ¶ 6.) On June 20, 2008, Wright signed a plea agreement in the federal criminal case and pled guilty to tax evasion, in violation of 26 U.S.C. § 7201. (Def.'s 56.1 ¶ 8; Pl's 56.1 ¶ 29.) The same day, Wright appeared before Judge Feuerstein and pled guilty, and Judge Feurstein accepted his plea. (Def.'s 56.1 ¶ 8.) Wright was also charged and pled guilty in New York State Court to Grand Larceny

---

[1] Although the parties' respective Rule 56.1 statements of facts contain specific citations to the record, the Court cites to the Rule 56.1 statements instead of the underlying citation to the record where possible. The Court notes that plaintiff's counsel has failed to comply with Local Rule 56.1 in that he has not submitted a Rule 56.1 statement of fact that includes "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party"; instead, plaintiff's Rule 56.1 counterstatement is largely identical to plaintiff's original Rule 56.1 statement submitted in connection with plaintiff's summary judgment motion and does not directly correspond to any of the numbered paragraphs in defendant's statement. However, plaintiff's submissions make clear what evidence she is citing in response to defendant's 56.1 statement. Thus, plaintiff's non-compliance with the local rule has not prejudiced the defendant, and the Court, in its discretion, overlooks plaintiff's failure to fully comply with the local court rules. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules.") (citations omitted); *see also Capellupo v. Nassau Health Care Corp.*, No. 06–CV–4922 (JFB), 2009 WL 1705749, at *1 n.3 (E.D.N.Y. June 16, 2009) (excusing defendant's failure to include record citations in Rule 56.1 statement, where appropriate record citations were included elsewhere in attorney's submissions); *cf. Williams v. R.H. Donnelley, Inc.*, 199 F. Supp. 2d 172, 174 n.1 (S.D.N.Y. 2002) (excusing failure to submit statement pursuant to Local Civil Rule 56.1 where the facts were set forth in the party's memorandum of law).

in the Second Degree and seven counts of Offering a False Instrument for Filing in the First Degree. (Def.'s 56.1 ¶ 7; Pl's 56.1 ¶ 30.)

Probation Officer Steven Guttman prepared a presentence investigation report ("PSR"), dated November 13, 2008, which Supervising Probation Officer Carmen Leichtle approved. (Def.'s 56.1 ¶ 9.) The PSR noted Wright's medical conditions, including diabetes, hospitalizations, and medications. (*Id.*; Pl.'s 56.1 ¶¶ 31, 33.) With the PSR, on November 13, 2008, Probation Officer Guttman issued, and Supervising Probation Officer Leichtle approved, a Sentence Recommendation of three years' probation with twelve months' home confinement with electronic monitoring. (Def.'s 56.1 ¶ 10; Pl.'s 56.1 ¶ 34.) The Sentence Recommendation noted Wright's physical ailments, including diabetes, and stated that the deterioration of his condition over the past two to three years provided a basis for a non-custodial sentence. (Def.'s 56.1 ¶ 10; Pl.'s 56.1 ¶ 31.) On February 27, 2009, Probation Officer Guttman and Supervising Probation Officer Leichtle submitted an addendum to the PSR, which noted that the United States had no objections, that Wright submitted a letter dated February 13, 2009, and that Wright's counsel submitted a letter dated February 17, 2009, which alleged factual errors in the Offense Category and personal history sections of the PSR. (Def.'s 56.1 ¶ 11.) There was no objection to the recommendation of home confinement with electronic monitoring. (Def.'s 56.1 ¶ 12.) On October 22, 2009, a second addendum to the PSR was filed, which indicated that Wright underwent a partial amputation of his left foot during the summer of 2009. (Pl.'s 56.1 ¶ 32.)

On March 3, 2010, Judge Feuerstein sentenced Wright to three years' probation with the first twelve months to be served under home detention with electronic monitoring, and on March 18, 2010, the court entered a judgment of criminal conviction memorializing that sentence. (Def.'s 56.1 ¶ 13; Pl.'s 56.1 ¶ 35.)

On March 22, 2010, Wright first met with Probation Officer John Danielo, who reviewed the conditions of the electronic home monitoring program with Wright; Wright indicated that he understood the conditions and they both signed a Home Confinement Participant Agreement ("Agreement"). (Def.'s 56.1 ¶ 14.) The Agreement provided that "[w]hile in the home confinement program, [Wright] agree[s] to wear a non-removable ankle bracelet that will be attached by [the] officer"; that Wright would "not [ ] remove or tamper with the ankle bracelet (transmitter) except in a life threatening situation or with the prior permission of [the] officer"; and that Wright agreed "to allow authorized personnel to inspect and maintain the ankle transmitter and receiver/dialer." (Def.'s 56.1 ¶¶ 15-16.) Probation Officer Danielo installed the ankle bracelet at Wright's home on April 13, 2010, and tightened the bracelet according to the "standard" of putting a finger between the bracelet and the skin. (Def.'s 56.1 ¶ 17; Pl.'s 56.1 ¶ 37.) At his deposition, Wright testified that he did not complain to Probation Officer Danielo when the ankle bracelet was fitted on his ankle. (Def.'s 56.1 ¶ 18.)

Probation Officer Danielo made five home visits to Wright after fitting the ankle bracelet – on April 30, June 16, July 8, September 9, and October 12, 2010 – and also made telephone contact with Wright in the interim. (Def.'s 56.1 ¶ 19; Pl.'s 56.1 ¶ 38.) Probation Officer Danielo testified that it was his normal practice to view ankle bracelets from a distance and that he did not

inspect the area for evidence of irritation prior to October 12, 2010. (Pl.'s 56.1 ¶ 38; Def.'s Counter 56.1 ¶ 38.)

Before October 12, 2010, Wright did not complain to his attorney or the court about the ankle bracelet, and did not request permission to seek medical treatment. (Def.'s 56.1 ¶ 24.) However, the parties dispute whether Wright complained to Probation Officer Danielo before October 12, 2010. Defendant points to the fact that, according to the entries in the chronology/case history and Probation Officer Danielo's deposition testimony, Wright never complained of the ankle bracelet until October 12, 2010. (Def.'s 56.1 ¶¶ 20-21.) However, plaintiff contends that he began to experience a rash, irritation, and redness on his right ankle in August 2010 and complained to Danielo "a couple of times" regarding this condition. (Pl.'s 56.1 ¶ 39.) For example, Wright testified in his deposition that he first complained to Danielo "probably two months" before the October 2010 hospitalization, and that Danielo did not take any action:

Q. Do you remember what you told him [i.e., Probation Officer John Danielo]?

A. "It hurts. John, there's something wrong with this."

Q. Did you tell him why it hurt?

A. Friction, rubbing up against my ankle.

Q. What did he say? Did he respond?

A. "Nothing I can do about that, Jim."

(Pl.'s 56.1 Ex. D, Wright Dep. at 77.) Plaintiff also testified that he showed Danielo the ankle on more than one occasion, and that he responded, "Nothing I can do about it, Jim." (*Id.* at 78-79.)[2]

On October 12, 2010, Wright showed Probation Officer Danielo a cut/infection on his ankle; Danielo told Wright and Sprague that Wright should see a doctor and gave Wright permission to leave his home that day. (Def.'s 56.1 ¶ 22; Pl.'s 56.1 ¶ 40.) Probation Officer Danielo also moved the bracelet away from the cut, tightened it so it would not slide down, and told Wright to put a band on the bracelet to hold it in place until he visited a doctor. (*Id.*) On October 12, Sprague and Wright went to Dr. Lucks who treated Wright with an antibiotic. (Def.'s 56.1 ¶¶ 25-26; Pl.'s 56.1 ¶ 47.) Wright was admitted to John T. Mather Memorial Hospital four days later, on October 16, 2010. (Def.'s 56.1 ¶ 26; Pl.'s 56.1 ¶ 48.) That same day, Wright called Probation Officer Danielo to inform him that he was admitted to the hospital due to the infected cut on his ankle, and Danielo gave permission for the electronic bracelet to be cut off and requested that it be safeguarded for return. (Def.'s 56.1 ¶ 27; Pl. 56.1 ¶ 41.) Emergency room doctors cut off the ankle bracelet and gave it to Sprague who returned it to Probation Officer Danielo. (Def.'s 56.1 ¶ 28.) After the bracelet was removed on October 16, 2010, Wright did not subsequently wear an electronic bracelet. (Def.'s 56.1 ¶ 28.)

During Probation Officer Danielo's home visit on January 4, 2011, Wright signed an agreement by which he waived his right to a hearing and counsel, and agreed to a modification of the terms of his home confinement to non-electronic home

---

[2] In any event, Dorothy Sprague, Wright's companion, testified that she and Wright first realized how serious the ankle condition had become on October 12, 2010, when they went to see Dr. Lucks. (Def.'s 56.1 ¶ 25; Pl.'s 56.1 ¶ 39.)

confinement. (Def.'s 56.1 ¶ 29.) Probation Officer Danielo then applied to the court, with his supervisor David Washington's approval, to modify the conditions of Wright's confinement so that the balance of his home confinement would be completed "non-electronically using the BI Voice system." (Def.'s 56.1 ¶ 30; Pl.'s 56.1 ¶ 44.) The court approved the modification on January 24, 2011, and Wright signed a Voice Verification Participant Agreement on February 9, 2011. (Def.'s 56.1 ¶ 31; Pl. 56.1 ¶ 45.) On April 27, 2011, Probation Officer Danielo petitioned the court to credit Wright with the time spent in the hospital and to end his home confinement. (Def.'s 56.1 ¶ 32.) On May 5, 2011, the court approved the request, and Wright's home confinement ended. (*Id.*)

Wright was treated at Stony Book University Hospital from January 29, 2013 through March 4, 2013. (Pl. 56.1 ¶ 51.) On February 5, 2013, Wright underwent an amputation of digits four and five and fourth and fifth metatarsal heads on the right foot, and on February 21, 2013, Wright underwent a below the knee amputation to his right leg. (Pl.'s 56.1 ¶¶ 57, 63.)

B. Procedural History

Plaintiff commenced this action on March 15, 2013. Defendant moved to dismiss for lack of subject matter jurisdiction and for summary judgment on December 5, 2014, and plaintiff cross-moved for summary judgment the same day. Plaintiff filed opposition papers on January 19, 2015, and defendant filed opposition papers on January 22, 2015. Plaintiff filed reply papers on February 5, 2015, and defendant filed its reply papers on February 6, 2015. James Wright died in February 2015, and Alexis Wright was thereafter appointed as administrator of the estate and substituted as plaintiff in this action. On May 29, 2015, plaintiff filed an amended complaint and a renewed motion for summary judgment. On June 1, 2015, defendant filed a renewed motion to dismiss the complaint and for summary judgment. Oral argument was held on August 7, 2015. The Court has fully considered the parties' submissions.

II. DISCUSSION

A. Motion to Dismiss

1. Standard of Review

When a court reviews a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), it "must accept as true all material factual allegations in the complaint, but [it is] not to draw inferences from the complaint favourable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004). The burden of proving subject matter jurisdiction by a preponderance of the evidence is on the plaintiff. *Aurecchione v. Schoolman Transp. Sys., Inc.,* 426 F.3d 635, 638 (2d Cir. 2005). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings" to resolve the jurisdictional issue. *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000) (citing *Kamen v. Am. Tel. & Tel. Co.,* 791 F.2d 1006, 1011 (2d Cir. 1986)).

Federal courts are courts of limited jurisdiction and may not preside over cases if subject matter jurisdiction is lacking. *Lyndonville Sav. Bank & Trust Co. v. Lussier,* 211 F.3d 697, 700-01 (2d Cir. 2000). Unlike lack of personal jurisdiction, lack of subject matter jurisdiction cannot be waived and may be raised at any time by a party or by the Court *sua sponte. Id.* at 700. "If subject matter jurisdiction is lacking, the

action must be dismissed." *Id.* at 700-01; *see also* Fed. R. Civ. P. 12(h)(3).

It is axiomatic that "[a] case is properly dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova*, 201 F.3d at 113. "[T]he United States, as sovereign, is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Testan*, 424 U.S. 392, 399 (1976) (internal quotation marks and citation omitted). In other words, the United States enjoys sovereign immunity from suit except to the extent to which, and under the terms of which, it consents to be sued. *See Millares Guiraldes de Tineo v. United States*, 137 F.3d 715, 719 (2d Cir. 1998) (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941)).

2. Application

Defendant argues that the court lacks subject matter jurisdiction over plaintiff's claim because "the Probation Officers, and thus the United States, are absolutely immune from claims regarding the preparation of a presentence report and the implementation of a court order." (Def.'s Mem. of Law, at 11.) Plaintiff counters that the alleged negligent acts related to the ankle bracelet were not "under judicial direction" or "integrally related" to the judicial process. (*See* Pl.'s Opp'n, at 18-19 ("The Court never directed [the Probation Officer] to place the radiofrequency transmitter on Mr. Wright's ankle as opposed to his wrist because the order is silent on the location of placement, and the location is determined based on Federal and EDNY electronic monitoring policies. The court did not direct U.S. Probation Officer John Danielo to make any inspections of the ankle bracelet, rather Danielo's half-hearted and negligent inspection of the ankle bracelet during home visits was as a result of Federal and EDNY electronic monitoring policies. The court did not direct U.S. Probation Officer John Danielo to make the bracelet tighter and instruct Mr. Wright to wedge a band in it. The court certainly did not direct U.S. Probation Officer John Danielo to not report any injuries of Mr. Wright to the court. None of these negligent acts and omissions were under the direction of the court, rather, John Danielo took matters into his own hands, and unilaterally made decisions without consulting his supervisors, medical professionals or the court.").)

As an initial matter, the Court makes clear that Probation Officer Danielo has absolute immunity for any claim that electronic monitoring should not have been ordered by Judge Feuerstein in the first place. However, for the reasons that follow, the Court concludes that court-ordered electronic monitoring does not immunize a probation officer from alleged negligence, if proven, in the placement and maintenance of an ankle bracelet pursuant to that monitoring. Similarly, the discretionary function exception to the FTCA would not apply to any such negligence. Thus, the Court declines to dismiss plaintiff's negligence claim under Rule 12(b)(1).[3]

---

[3] As a threshold matter, the government suggests that plaintiff's claim is limited to the decision by the Probation Department to implement electronic monitoring at the time of sentencing. Although the defendant is correct that the Amended Complaint does focus on negligence by the Probation Officers in failing to take plaintiff's medical condition into account at the time of sentencing in recommending monitoring, the Court does not believe that the claim should be construed to be so limited. First, not all of the allegations in the Amended Complaint make

7

It is well-established that the United States is immune from suit unless it consents to be sued. *United States v. Dalm,* 494 U.S. 596, 608 (1990). This immunity extends to federal agencies and officers acting in their official capacities. *FDIC v. Meyer,* 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."); *Dotson v. Griesa,* 398 F.3d 156, 177 (2d Cir. 2005). The Federal Tort Claims Act ("FTCA") provides the framework under which the United States has consented to suits involving common law tort or negligence claims. 28 U.S.C. §§ 2671-80. The FTCA provides a limited waiver of the Government's sovereign immunity for claims "for injury or loss of property, or personal injury or death caused by the negligence or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1); *see also Leone v. United States*, 910 F.2d 46, 48-49 (2d Cir. 1990). "In other words, for the Government to be liable under the FTCA, a federal employee must be found to be both negligent and acting within the scope of his duties." *Hentnik v. United States*, No. 02 CIV. 9498 (DC), 2003 WL 22928648, at *1 (S.D.N.Y. Dec. 10, 2003) (citing 28 U.S.C. § 1346(b)).

In determining whether absolute immunity or qualified immunity applies to a particular officer, courts apply "a 'functional' approach to immunity questions other than those that have been decided by express constitutional or statutory enactment." *Forrester v. White*, 484 U.S. 219, 224 (1988). "[I]mmunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches." *Id.* at 227 (emphasis removed). Accordingly, absolute immunity extends to officers who "perform[ ] 'functions' which are an 'integral part of the judicial process' and 'comparab[le] . . . to those of the judge.'" *Dudek v. Nassau Cnty. Sheriff's Dep't*, 991 F. Supp. 2d 402, 415 (E.D.N.Y. 2013) (quoting *Imbler v. Pachtman*, 424 U.S. 404, 420, 423 n.20 (1976)).

Thus, the Second Circuit has held that "federal probation officers preparing and furnishing presentence reports to the court" are entitled to absolute immunity because "in preparing presentence reports, a federal probation officer acts as an arm of the court

---

reference to negligence "at the time of sentencing." For example, towards the end of paragraph 31 of the Amended Complaint, there are a number of allegations that are not limited to the time of sentencing. (*See* Am. Compl. ¶ 31.) In addition, paragraph 20 makes reference to the entire time period from April 13, 2010 to October 16, 2010. (*See* Am. Compl. ¶ 20 ("That *beginning on* or about April 13, 2010, John D'anelo [sic] negligently placed an ankle monitoring bracelet on plaintiff's decedent's right leg and/or ankle as a means to monitor plaintiff's decedent's home confinement resulting from a sentence that occurred on March 3, 2012, and that this ankle bracelet remained on plaintiff's decedent's right leg and/or ankle up to and including October 16, 2010.") (emphasis added).) Second, it is clear from the Court's review of the discovery that both sides explored not just the initial decision to utilize an ankle bracelet at the time of sentencing, but also the alleged negligent acts by the Probation Department in connection with the continued use and maintenance of that bracelet through October 2010. In fact, the defendant briefed this issue in its initial memorandum of law. (*See* Def.'s Mem. of Law, at 18-20.) Moreover, in her opposition papers, plaintiff made clear that the claim is not based upon any acts or omissions in the sentencing phase, but rather negligence in the supervision phase. (*See* Pl.'s Opp'n, at 13.) Given that defendant has been aware of these alleged negligent acts, explored them fully in discovery, and briefed them in the summary judgment motion, the Court deems the claim (even if not pled clearly in the complaint) amended to conform with the evidence in the summary judgment motion. *See M.V.B. Collision, Inc. v. Allstate Ins. Co.*, 728 F. Supp. 2d 205, 213 n.8 (E.D.N.Y. 2010) (collecting cases).

and that task is an integral part of one of the most critical phases of the judicial process." *Dorman v. Higgins*, 821 F.2d 133, 137 (2d Cir. 1987).[4] Courts have also found absolute judicial immunity warranted when an officer acts "pursuant to a court order that he is required to execute." *Dudek*, 991 F. Supp. 2d at 415 (quoting *Maldonado v. N.Y. County Sheriff,* 2006 WL 2588911, at *5 (S.D.N.Y. Sept. 6, 2006) (collecting cases)) (internal quotation marks omitted).

However, probation officers are not always entitled to absolute immunity. "[T]he more distant a function is from the judicial process, the less likely absolute immunity will attach." *Scotto v. Almenas*, 143 F.3d 105, 113 (2d Cir. 1998) (internal citation and quotation marks omitted). Court officers who enforce judicial orders are not entitled to absolute immunity if they exceed the scope of the court's order or enforce it in an improper manner. *See Levine v. Lawrence*, No. 03-CV-1694 (DRH ETB), 2005 WL 1412143, at *9 (E.D.N.Y. June 15, 2005) (collecting cases); *Dudek*, 991 F. Supp. 2d at 416 (declining to dismiss claim based on absolute immunity where officers retained longarms without guidance from the court once the order by which they seized the longarms was vacated). "[I]mmunity will not attach where an individual acted under her own initiative rather than "at the initiative of the court." *McKnight v. Middleton*, 699 F. Supp. 2d 507, 527 (E.D.N.Y. 2010) (quoting *Scotto*, 143 F.3d at 111), *aff'd,* 434 F. App'x 32 (2d Cir. 2011); *see also Scotto*, 143 F.3d 113 (holding probation officer who made discretionary decision to issue a warrant and initiate parole revocation was not entitled to absolute immunity); *Hamilton v. New York City Mun.*, No. 9:11-CV-0348 DNH/DEP, 2012 WL 398819, at *12 (N.D.N.Y. Jan. 10, 2012) ("Absolute immunity is less likely to attach when the official function involved is less adjudicative in nature, such as when the officer acts under his or her own initiative rather than that of the court.") (citing *Scotto*, 143 F.3d at 111), *report and recommendation adopted sub nom. Hamilton v. New York City Mun.*, No. 9:11-CV-0348 DNH/DEP, 2012 WL 386631 (N.D.N.Y. Feb. 7, 2012).

Here, although defendant argues that Probation Officer Danielo is entitled to absolute immunity because he was enforcing a valid court order, Judge Feuerstein gave no directive regarding the placement, manner, or maintenance of an ankle bracelet; rather, Judge Feuerstein simply ordered electronic monitoring. Thus, for example, when Danielo allegedly tightened the ankle bracelet upon inspection in October 2010, he was not doing so at Judge Feuerstein's direction. In other words, the fact that Probation Officer Danielo was implementing a court order in attaching the electronic monitoring device to Wright's body does not entitle the defendant to absolute immunity for his discretionary decisions regarding the precise placement, monitoring, and maintenance of Wright's

---

[4] Although plaintiff's complaint pled a negligence claim against Probation Officer Guttman for his part in preparing the Presentence Investigation Report and its addendum, plaintiff's opposition brief stated that she was "not alleging that the United States is liable for negligence under the FTCA with respect to the acts and/or omissions of [Probation Officers Guttman and Leichtle] during the sentencing phase." (Pl. Opp. at 13.) Further, at oral argument, plaintiff's counsel confirmed that plaintiff was not pursuing claims regarding preparation of the PSR. Accordingly, the Court considers this claim abandoned. In any event, such a claim would be dismissed pursuant to Rule 12(b)(1) because Probation Officer Guttman (as well as Supervising Probation Officer Leichtle) would have absolute immunity in preparing the PSR. *See, e.g.*, *Dorman*, 821 F.2d at 137; *Hili v. Sciarotta*, 955 F. Supp. 177, 179-181 (E.D.N.Y. 1997); *Hirsch v. Desmond*, No. 08-CV-2660 (JS) (AKT), 2012 WL 537567, at *3-4 (E.D.N.Y. Feb. 15, 2012).

electronic bracelet, which plaintiff contends were done negligently, from April 2010 through October 2010.[5]

Further, the allegations regarding Probation Officer Danielo's negligence are not subject to immunity under the discretionary function exception to the FTCA. Under the FTCA, Congress's authorization of tort suits against the United States "shall not apply to . . . [a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). This exception only applies if two requirements are satisfied. First, the alleged tort must involve a "judgment or choice," *United States v. Gaubert,* 499 U.S. 315, 322 (1991), and thus, cannot apply if a "federal statute, regulation, or policy mandates a specific course of conduct," *Saint-Guillen v. United States*, 657 F. Supp. 2d 376, 386 (E.D.N.Y. 2009). Second, the judgment or choice "must be grounded in considerations of public policy or susceptible to policy analysis." *Coulthurst v. United States*, 214 F.3d 106, 109 (2d Cir. 2000) (citations and internal quotation marks omitted). The second requirement "reflects Congress's decision to 'prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" *Saint-Guillen*, 657 F. Supp. 2d at 386 (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984)). "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324. "The interplay between the first and second prongs . . . means that certain acts, although discretionary, are not covered by the exception because they involve 'negligence unrelated to any plausible policy objective.'" *Doe v. United States*, No. 02 CIV 8974 DLC, 2010 WL 3562568, at *4 (S.D.N.Y. Sept. 8, 2010) (quoting *Coulthurst*, 214 F.3d at 111).

Thus, acts such as negligently driving a car on duty, *Gaubert*, 499 U.S. at 325 n.7, or negligently maintaining gym equipment, *Coulthurst*, 214 F.3d at 109, are not protected by the discretionary function exception. In *Coulthurst*, the plaintiff, a federal inmate, was injured when a weight lifting machine cable snapped; he sued,

---

[5] Plaintiff contends in her briefing that Probation Officer Danielo acted upon his own initiative in placing the electronic monitoring bracelet on Wright's ankle, rather than his wrist. In particular, plaintiff points to a Federal Monograph that states that the device can be placed on the wrist, or that a Voice Verification System, can be used if medical reasons prevent the use of the ankle. (Pl.'s 56.1 at ¶¶ 16-17, Ex. E.) Defendant has submitted evidence that the Probation Department in the Eastern District of New York has not used electronic wrist bracelets apart from a period from May to October 2012. (Def's Counter 56.1 Ex. B, Sandford Decl. ¶ 4.) However, apart from the availability of a wrist bracelet, plaintiff contends that the Probation Officer should have realized that Wright was unsuitable given his medical conditions, and advised the Court immediately of such unsuitability, pursuant to the Eastern District of New York Location Monitoring Program. The Court concludes that, even in the absence of the availability of a wrist bracelet, there are disputed issues of material fact that preclude summary judgment (and absolute immunity) on whether there was any negligence in the placement of the device on the ankle under the particular circumstances of this case. Moreover, as noted *supra*, there are disputed issues of fact as to alleged negligent monitoring and maintenance of the device on the ankle, including after alleged complaints of irritation in or about August 2010.

alleging that the defendant "failed to diligently and periodically inspect the weight equipment and cable." *Id.* at 107-108. The Second Circuit found that the complaint "fairly alleg[ed] negligence outside the scope of the [discretionary function exception]" because "[a]n inspector's decision (motivated simply by laziness) to take a smoke break rather than inspect the machines, or an absent-minded or lazy failure to notify the appropriate authorities upon noticing the damages cable, are examples of negligence fairly encompassed by the allegations of the complaint that do not involve considerations of public policy" and thus, "do not reflect the kind of considered judgment grounded in social, economic, and political policy which the [discretionary function exception] is intended to shield from judicial second guessing." *Id.* at 111 (internal citations and quotation marks omitted).

Here, plaintiff's allegations that Probation Officer Danielo, among other things, negligently failed to act promptly or appropriately when notified that Wright had an injury to his ankle are analogous to the claims stemming from a failure to act raised in *Coulthurst*. Further, those allegations, as well as the other allegations, regarding Probation Officer Danielo's alleged negligence, if proven, do not involve a reasoned policy decision made by the United States Probation Department such that judicial second-guessing would be inappropriate. *Cf. Banks v. United States*, No. 10 CIV. 6613 GBD GWG, 2011 WL 4100454, at *14 (S.D.N.Y. Sept. 15, 2011) (collecting cases holding decision how to respond to inmate violence is grounded in policy considerations), *report and recommendation adopted*, No. 10 CIV. 6613 GBD GWG, 2011 WL 5454550 (S.D.N.Y. Nov. 9, 2011). Instead, plaintiff argues that Probation Officer Danielo's negligent acts and omissions were contrary to the policies and procedures of the Probation Department. Accordingly, plaintiff's negligence claims are not barred by the discretionary function exception.

In sum, because the precise placement of the monitoring device and the handling of problems with the ankle bracelet were not dictated in any way by the court order directing that electronic monitoring take place, the alleged negligence by Probation Officer Danielo in connection with the precise placement, and the ongoing monitoring and maintenance of the ankle bracelet through October 2010, are not covered by absolute immunity or the discretionary function exception to the FCTA. Accordingly, given the nature of the disputed issues of fact regarding the alleged negligent conduct by the Probation Officer under the circumstances of this case, the Court declines to dismiss this case due to a lack of subject matter jurisdiction under Rule 12(b)(1).

B. Summary Judgment

1. Standard of Review

The standard for summary judgment is well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013). The moving party bears the burden of showing that he is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of

materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.'" *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (alteration and emphasis in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties alone will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.-Conn.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

### 2. Application

In New York, in an action for negligence, a plaintiff must prove three elements: "'(1) the existence of a duty on defendant's part to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof.'" *Alfaro v. Wal-Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000) (quoting *Akins v. Glens Falls City Sch. Dist.*, 53 N.Y.2d 325, 333 (1981)).

#### a. Defendant's Motion

Defendant argues that plaintiff's claims alleging negligence by Probation Officer Danielo are meritless and should be dismissed because Danielo acted reasonably in enforcing Judge Feuerstein's order and seeking modification of the order upon a showing of medical justification. (Def.'s Mem. of Law, at 18-20.)

However, plaintiff has pointed to evidence that could cause a jury, if it viewed the evidence most favorably to the plaintiff, to reasonably conclude that Probation Officer Danielo acted negligently. Specifically, plaintiff points to Probation Officer Danielo's testimony that he inspected the bracelet "from a distance" and

12

never inspected the ankle for evidence of irritation prior to October 12, 2010. (Pl.'s 56.1 Ex. E, Danielo Dep. at 111-13.) Probation Officer Danielo further testified that, when Wright and Sprague complained about the cut on Wright's ankle, he tightened the bracelet and told Wright to use a band to hold it in place. (*Id.* at 117, 130.) A rational jury could certainly find that, after being put on notice that Wright's ankle was irritated, Probation Officer Danielo acted negligently in tightening the ankle bracelet and leaving it on Wright's ankle, rather than removing it (or immediately seeking permission from Judge Feuerstein to remove it). *Cf. Breen v. Garrison*, 169 F.3d 152, 153 (2d Cir 1999) (vacating grant of qualified immunity where officer cuffed plaintiff too tightly not withstanding his protests of pain); *Sterlin v. City of New York*, No. 11 CIV. 0715 JPO, 2014 WL 2560595, at *5 (S.D.N.Y. June 6, 2014) (collecting cases and denying summary judgment on excessive force claim where plaintiff's handcuffs were so tight that they caused pain and numbness, plaintiff complained of the tightness, and after the handcuffs were removed, plaintiff's wrists remained visibly swollen into the next day). On this issue, plaintiff also points to the fact that Probation Officer Danielo first informed the court that he believed Wright was unsuitable for electronic monitoring on October 16, 2010, four days after Wright complained of the cut on his ankle. (Danielo Dep. at 72-73.)

Further, there is a disputed issue of fact as to whether Wright told Probation Officer Danielo that the electronic monitoring bracelet was bothering his ankle before October 12, 2010. Plaintiff contends that Wright complained to Danielo "a couple of times" before the October 12 visit regarding a rash, irritation, and redness on his right leg. (Wright Dep. at 69.) However, according to Probation Officer Danielo, October 12 was the first time that he was alerted to any problem with the ankle bracelet. (Danielo Dep. at 124.) Such disputed issues of fact preclude summary judgment on the negligence claim and, if plaintiff's version of events is believed, provide additional support for her claim that Probation Officer Danielo was negligent in failing to take action to remove the bracelet until October 16, 2010.

In sum, accepting Wright's version of the events and construing the evidence most favorably to plaintiff, there is sufficient evidence to create disputed issues of fact as to whether Probation Officer Danielo breached his duty of care to Wright in (1) placing the bracelet on the ankle, notwithstanding Wright's medical conditions as noted in the PSR and addenda (including a partial amputation of his left foot in the summer of 2009); (2) failing to timely and properly inspect Wright's ankle from April to October 2010; (3) tightening the bracelet and keeping it on the leg rather than removing it, or notifying the court of Wright's injury, on October 12, 2010; and (4) failing to notify the court of Wright's injury before October 16, 2010. Accordingly, defendant's motion for summary judgment is denied.[6]

---

[6] To the extent that defendant argues that Wright was at fault for his injuries in failing to notify Probation Officer Danielo or otherwise take action sooner, such an argument goes to the issue of comparative negligence rather than absolving the government of all liability, and further, cannot be decided at this juncture. *See, e.g.*, *Boutsis v. Home Depot*, 371 F. App'x 142, 144 (2d Cir. 2010) ("To the extent that defendant suggests that it should be relieved of liability because of plaintiff's negligence . . . , it is clear under New York law that the issue of comparative negligence is a question of fact proper for determination by a jury."); *Tuthill v. United States*, 270 F. Supp. 2d 395, 399 (S.D.N.Y. 2003) ("It is well settled that comparative negligence must be determined by a jury, and therefore cannot be decided

b. Plaintiff's Motion

Plaintiff argues that she is entitled to summary judgment on the negligence claim because Probation Officer John Danielo had a duty of reasonable care to Wright, which he breached by failing to timely inspect Wright's ankle monitor, failing to timely remove the ankle monitor, and failing to timely notify the court of an injury. (Pl. Mem. of Law, at 8-15.)

In addition to the evidence already discussed above in connection with the analysis of defendant's motion for summary judgment, the Court also notes that plaintiff relies upon expert evidence to support her negligence claim. First, plaintiff has submitted the declaration of Dr. Elizabeth Harrington who opines, among other things, that (1) "given Mr. Wright's medical history, (especially diabetes, peripheral neuropathy and prior partial amputation due to diabetes), the U.S. Department of Probation and its employee were negligent and failed to use reasonable care under the circumstances in placing the radiofrequency transmitter on Mr. Wright's ankle and failing to timely take actions to remove it" (2) "the irritation and redness from the ankle bracelet would have been visible upon inspection as of September 9, 2010" and "the failure of U.S. Probation Officer John Danielo on September 9, 2010 to properly inspect the transmitter, remove it and inform the Court were substantial factors in causing injury to Mr. James Wright, including months of hospitalizations, surgeries, debridements and ultimately a below the knee amputation"; and (3) "the failure to remove the ankle transmitter and inform the court, and instead, acting to make the bracelet tighter and instructing Mr. Wright to wedge a band in it on October 12, 2010, were all substantial factors in causing an aggrevation [sic], exacerbation and worsening of Mr. Wright's cut and infection on the ankle." (Ex. Q to Pl.'s 56.1, Harrington Decl. at ¶¶ 11-15.)

Second, plaintiff has submitted the expert report of a corrections consultant, Robert Thornton, who opines that Probation Officer Danielo "acted in contravention of both national and local [ ] policy, without proper training and far below the standard of care that govern the profession of a community corrections agency and officer." (Ex. T to Pl.'s Counter 56.1, Expert Witness Report of Robert L. Thornton, M.Ed. at 14.) In particular, the expert opines that "[b]y Officer Danielo's own statement, he knew Mr. Wright's case was not appropriate for electronic monitoring but against policy, took no action to at least inform the court of the potential complications of wearing an electronic transmitter, even though other options of monitoring that would not endanger Wright's health were readily available." (*Id.*) Moreover, the expert further opines, "[t]hen, without any form of training regarding diabetes, a disease that is especially prevalent in the corrections population, failed to follow agency guidelines for inspection of the ankle device which resulted in infection of Mr. Wright's leg. When advised of the soreness and upon seeing the injury already caused, Danielo made the decision on his own and without any form of consultation with the court, his superiors or medical professionals, to actually tighten the 'bracelet' and left it up to the offender, who was in the officer's care, to seek medical attention." (*Id.*)[7]

---

on a summary judgment motion.") (citing *Louise B.G. v. New York City Bd. Of Educ.*, 533 N.Y.S.2d 293, 295 (N.Y. App. Div. 1988)).

[7] Although the expert also suggests that the Probation Department should not have recommended electronic monitoring in the PSR, (*see id.*), that

Notwithstanding these expert opinions, the disputed issues of fact that preclude summary judgment for the defendant also preclude summary judgment for the plaintiff. As previously described, there is a disputed issue of fact as to whether Wright complained to Probation Officer Danielo about irritation to his right leg before October 12, 2010. In particular, according to Danielo, October 12 was the first time that he was alerted to any problem with the ankle bracelet. (Danielo Dep. at 124.) Further, defendant points to the fact that Sprague testified that she and Wright did not consider Wright's condition to be severe until October 12, 2010, (Def.'s 56.1 Ex. Q, Sprague Dep. at 35-36), and that prior to complaining to Probation Officer Danielo on that date, Wright never complained to his attorney or the court about his condition and never requested medical treatment, or permission to obtain medical treatment. (Wright Dep. at 70, 73-76, 81.) Further, the defendant points out that, on October 12, Probation Officer Danielo told Wright to notify him that day of Dr. Lucks' medical opinion as to whether the bracelet should be removed; however, he did not hear from Wright until four days later when he checked into the hospital, and once Probation Officer Danielo was told that the emergency room doctors recommended removal, he directed removal and subsequently applied to the court for an order modifying the terms of Wright's home confinement. (Danielo Dep. at 129, 143, 147, 149, 155; Def.'s 56.1 Ex. T, Request for Modifying the Conditions of Home Supervision.) If defendant's evidence is credited and viewed most favorably to the defendant, a jury could reject these expert opinions and reasonably conclude that Probation Officer Danielo did not act

---

recommendation (as plaintiff now concedes) is certainly protected by absolute immunity.

negligently in the placement and monitoring of Wright's electronic ankle bracelet from April 2010 to October 2010.[8] Thus, plaintiff's motion for summary judgment on the negligence claim must be denied.

---

[8] Further, these factual disputes also create a genuine issue of disputed fact as to any comparative negligence by Wright. *See, e.g.*, *Dasher v. Wegmans Food Mkts. Inc.,* 758 N.Y.S.2d 585 (N.Y. App. Div. 2003) ("'[T]he question of a plaintiff's comparative negligence almost invariably raises a factual issue for resolution by the trier of fact.' Here, the evidence submitted by plaintiff does not establish a total absence of comparative negligence as a matter of law.") (quoting *Gudenzi-Ruess v. Custom Envtl. Sys.*, 622 N.Y.S.2d 833, 834 (N.Y. App. Div. 1995) (additional citations omitted)); *see also Calcano v. Rodriguez*, 936 N.Y.S.2d 185, 186-187 ("[A] plaintiff moving for summary judgment on the issue of liability in an action for negligence must eliminate any material issue, not only as to the defendant's negligence, but also as to whether the plaintiff's own comparative negligence contributed to the incident."); *Sale v. Lee*, 853 N.Y.S.2d 888 (N.Y. App. Div. 2008) (affirming denial of plaintiffs' summary judgment motion where plaintiffs' evidence did not establish that they were free from comparative negligence); *Maiello v. Kirchner*, 949 N.Y.S.2d 200, 203 (N.Y. App. Div. 2012). Although plaintiff argues that summary judgment is appropriate because the defendant failed to rebut Dr. Harrington's medical opinion, Dr. Harrington merely opines that Probation Officer Danielo was a cause of Wright's hospitalization and amputation. Dr. Harrington does not make any judgments as to Wright's own possible negligence. (*See* Harrington Decl.) In any event, as previously discussed, comparative negligence is inappropriate for resolution on a summary judgment claim in this case. *See, e.g.*, *Boutsis*, 371 F. App'x at 144.

V. Conclusion

For the foregoing reasons, the Court denies defendant's motion to dismiss for a lack of subject matter jurisdiction and motion for summary judgment. The Court also denies plaintiff's motion for summary judgment.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: February 11, 2016
Central Islip, NY


\*\*\*

Plaintiff is represented by Joseph Miklos, Robert A. Miklos, and Daniel Patrick Miklos of Silberstein, Awad & Miklos, P.C., 600 Old Country Road, Suite 412, Garden City, NY 11530. Defendant is represented by Vincent Lipari, U.S. Attorney's Office for the Eastern District of New York, 610 Federal Plaza, Central Islip, NY 11722.